## GUILLERMETY ET AL v. TREASURER OF PORTO RICO.

### APPEAL from the District Court of San Juan.

No 3.—Decided February 10, 1903.

REVENUES.—Laws such as the regulations and schedules for the assessment and collection of Insular industrial taxes, existing prior to the American occupation and expressly adopted by General Order continue in force until repealed by legislative provision and must govern in cases to which they are applicable.

TAXATION.—LOCAL AND FEDERAL.—Federal custom house regulations have no reference or application to local commercial and industrial taxes and prior to the Insular Revenue Law of 1901, the law existing at the time of American occupation and adopted by Military authority continued in force unaffected by Congressional legislation.

### STATEMENT OF THE CASE.

A "litigative-administrative" action having been instituted in the District Court of San Juan by Fidel Guillermety, Egozcue & Co., Cerecedo Hermanos & Co., Fernández Gaurán & Co., Isidoro A. Sánchez, Joaquin Ouffitting & Co., Sobrinos

IMPOSICIÓN DE CONTRIBUCIONES.—LOCALES Y FEDERALES.—Los reglamentos
de aduana del Gobierno Federal no, tienen referencia ni son aplicables á
las contribuciones locales sobre comercio é industrias, y con anterioridad
á la aprobación de la ley de rentas internas de 1901, la ley que existía en
la fecha de la ocupación americana, y adoptada por la autoridad militar,
continuó en vigor sin que fuese afectada por la legislación del Congreso.

### EXPOSICIÓN DEL CASO.

Ante la Corte de Distrito de San Juan se inició un pleito contencioso-administrativo, entre partes, de la una, y como demandantes, Fidel Guillermety, Egozcue y Compañía, Cerecedo Hermanos y Compañía, Fernández Gaurán y Compañía, Isidro A. Sánchez, Joachin Outffitting & Ca., Sobrinos de Izquierdo, Planas Rojo y Compañía, Juan Pizá, Bolívar Arruza y Compañía, Manuel Román, A. Mayol y Compañía, A. Vicente y Compañía, Luiña Hermanos y Compañía, José Peña y Compañía, José Mª Blanco, José María Suarez, Sobrinos de Armas, Palacios y Compañía, Gregorio Rodríguez, A. Margarida y Compañía, Alejandro Bozzo, Américo Salas, Castrillón y Ochoa, Pedro Giusti, Mendez y Compañía y Angel Suares, y de la otra, como demandado, el Tesorero de Puerto Rico, habiéndose establecido apelación para ante el Tribunal Supremo contra la sentencia de la Corte de Distrito, dictada en dicho caso, y la que, copiada literalmente, dice así:

"En la Ciudad de San Juan de Puerto Rico á seis de Junio de mil novecientos dos.—Visto este pleito Contencioso-Administrativo, que ante este Tribunal pende, entre partes, de una, los Sres. Fidel Guillermety, Egozcue y Compañía y otros comerciantes de San Juan, representados por el Letrado Don Herminio Díaz Navarro, y de la otra el Honorable Tesorero de Puerto Rico, representado por el Señor Fiscal, contra resoluciones del Señor Tesorero relativas al cobro de derechos adeudados por aquéllos, por importaciones que verificaron.

*Resultando:* que el Honorable Tesorero de esta Isla, en 14 de Julio de 1900, pasó tres comunicaciones al Colector de Rentas Internas de San Juan, expresando que como resultado de una investigación practicada en los Archivos de la Aduana, por un Agente de la Tesorería, los señores que aparecen en la lista adjunta á cada una de ellas, los de la primera comunicación han efectuado introduciones, siendo á la vez en una consignatarios de buques y practicado operaciones de banca, sin haber estado debidamente matriculados

de Izquierdo, Planas Rojo & Co., Juan Pizá, Bolivar Arruza
& Co., Manuel Román, A. Mayol & Co., A. Vicente & Co.,
Luiña Hermanos & Co., José Peña & Co., José María Blanco,
José María Suárez, Sobrinos de Armas, Palacios & Co.,
Gregorio Rodríguez, A. Margarida & Co., Alejandro Bozzo,
Américo Salas, Castrillón y Ochoa, Pedro Giusti, Mendez
& Co., and Angel Suárez, as plaintiffs, against the Treasurer
of Porto Rico, as defendant, an appeal was taken to this
Supreme Court from the judgment rendered in the case by
the District Court, which literally reads as follows:

"In the City of San Juan, Porto Rico, this sixth day of June, 1902.
In the matter of the "litigative-administrative" case pending before this
Court between the following parties, to-wit: Fidel Guillermety, Egozcue &
Co. and other merchants of San Juan, plaintiffs, represented by Herminio
Díaz Navarro, Esq., and the Honorable Treasurer of Porto Rico, defen-
dant, represented by the Fiscal, from the resolutions of the Treasurer
with reference to the collection of taxes imposed upon goods imported by the
former.   On July 14, 1900, the Treasurer of Porto Rico addressed three
communications to the Collector of Internal Revenue of San Juan, stating
that as a result of an investigation of the records of the Custom House, made
by an agent of the Treasury, it had been ascertained that of the merchants
whose names appeared in the list accompanying each communication, those
of the first had imported goods through the Custom House, and while
figuring in one of them as shipping agents, had at the same time carried on
a banking business, without having been duly registered under Schedule 2,
No. 16 A, 1st., of the Regulation for said fiscal year; these merchants were,
according to said list, Sobrinos de Izquierdo and Rubert Hermanos, there
resulting against the former a difference in Schedule of three hundred and
twenty-one dollars and thirty cents, and against the latter, two hundred
dollars and three cents.   Those referred to in the second communication had
had done business as importers in 1889-90, without being duly registered
under Schedule 2, No. 16, A., 3rd of the Regulation for said fiscal year,
and on the corresponding list appeared the appellants Angel Suárez, Ramirez
de Solá, Méndez y Co., Pedro Giusti, J. J. Pohl, Fernández Juncos & Co.,
Rucabado & Portela, José Soliveras, Américo Salas, Alejandro Bozzo,
R. Margarida, Gregorio Rodriguez, Sobrinos de Armas, Sobrinos de Portilla,
Pieras & Co., Ramón Almazán, José María Suárez, Francisco Marxuach,
with a difference against them of from sixty to one hundred and nineteen
dollars; the third communication referred to those who during said fiscal
year had imported goods worth more than twelve thousand dollars, without

en la Tarifa 2ª número 16, A, 1ª del Reglamento en dicho ejercicio, expresando esa lista ser estos, Sobrinos de Izquierdo y Rubert Hermanos, existiendo por ello la diferencia de tarifa del primero, de trescientos veinte y un dollars treinta centavos y la del segundo, doscientos dollars tres centavos: los de la segunda comunicación han practicado introduciones de efectos en 1889, 1900, sin haberse debidamente matriculado en la Tarifa 2ª número 16, A, 3ª del Reglamento en dicho ejercicio y en la lista que á dicha comunicación figura de los recurrentes Angel Suarez, Ramírez de Sola, Mendez y Compañía, Pedro Guisti, J. J. Pohl, Fernández Juncos y Compañía, Rucabado y Portela, José Soliveras, Américo Salas, Alejandro Bozzo, R. Margarida, Gregorio Rodríguez, Sobrinos de Armas, Sobrinos de Portilla, Pieras y Compañía, Ramón Almazán, José María Suarez, Francisco Marxuach, existiendo en cada uno de sesenta á ciento diez y nueve dollars de diferencia sobre lo que pagaban; y en la tercera los que efectuaron en dicho ejercicio introduciones por mayor valor de doce mil dollars, sin haber estado debidamente matriculados en la Tarifa 2ª número 16, A, 2 del Reglamento, los de la lista en la que figuran los demás recurrentes con una diferencia cada uno entre ciento diez y seis y doscientos treinta y seis dollars.

*Resultando:* que en dicho expediente el Colector de Rentas invitó á los expresados para que dentro de tercero día abonasen las cantidades que les resultan de la liquidación practicada sobre la cuota, constando del de Sobrinos de Armas y Planas Rojo y Compañía fueron requeridos á satisfacer la diferencia, todo lo que así como lo relacionado en el resultando anterior, fué remitido al Tribunal por la Administración, á virtud de reclamación derivada del escrito interponiendo recurso Contencioso-Administrativo contra la resosución del Tesorero, mandándoles comparecer á la Tesorería á satisfacer las diferencias ó la totalidad de derechos que adeudaban, pagando los que han producido los recibos en los que han hecho constar se reservan sus derechos sobre la reclamación establecida, y de los que aparecen de la certificación librada por el Colector, consta no han pagado esa diferencia ni producido recibo los recurrentes J. M. Bayona, Herrero Ortega y Compañía, Caldas y Compañía, F. Font Hermano, Meltz y Gandía, Cuétara Ros y Compañía, Francisco Alonso y Compañía, Francisco Marxuach, José Soliveras, F. Fernández Juncos y Compañía, Ramírez de Sola, The Pan American Express Co., Pieras y Compañía.

*Resultando:* que instruida la parte formuló demanda contencioso-administrativa, sentando como hechos que en la época de la dominación española regían determinadas tarifas de Comercio é Industria, imponiéndose á los importadores derechos según distintas categorías basadas en el alcance de sus importaciones y concediéndoles una patente de importación, que proclamada la soberanía Americana, las Ordenes Generales números 1 y 11 dejaron subsistentes las patentes; pero al sustituir el General Henry al General Brooke

being duly registered under Schedule 2, No. 16, A, 2 of the Regulation, the other appellants appearing upon the list thereto attached with differences against them ranging from one hundred and sixteen dollars and two hundred and thirty-six dollars.   The Colector of Internal Revenue requested the aforesaid merchants to satisfy within three days the amounts resulting against them from the liquidation made upon the quota assessed, while it appears that Sobrino de Armas and Planas, Rojo & Co., were summoned to pay the difference.   All these papers, together with those relating to the preceding finding of fact were forwarded to the Court by the Administration as a result of the claim set up in the writing interposing the administrative appeal from the resolution of the Treasurer ordering them to appear at the Treasury to pay the differences or total amounts of imposts due.   Some of these had paid under protest and produced receipts in which they reserved their rights against the demand made upon them, while from the certificate issued by the Collector it appears that the said difference had not been paid nor receipt therefor presented by the appellants J. M. Bayona, Herrero, Ortega & Co., Caldas & Co., F. Font Hermano, Meltz & Gandía, Cuétara, Ros & Co., Francisco Alonso & Co., Francisco Marxuach, José Soliveras, F. Fernández Juncos & Co., Ramirez de Solá, The Pan-American Express Co., Pieras & Co.   Notice having been served upon the party, a "litigative-administrative" action was brought, it being set up in the complaint that during the Spanish regime certain shedules of taxes on Commerce and Industry were in force, dues being imposed upon importers according to classifications based upon the importance of their importations, as shown by the licenses issued for the purpose; that upon the proclamation of American sovereignty, said licenses were continued in force by virtue of General Orders Nos. 1 and 11; but when General Henry succeeded General Brooke he repealed said Orders in so far as these licenses or *patentes* were concerned, and declared importation free to all; this decision, though not published, was communicated to the Collector of Customs at San Juan who was also Treasurer of Porto Rico, who notified all his subordinates in the Island, and informed thém that merchandise presented for entry should be detained only the time necessary to comply with the Custom-House ordinances, without requiring the exhibition of the importers' license; that said decision was posted to the public on the doors of the Custom-House, and published in the papers, and merchants made importations without any formality other than the production of a bill of lading made out to their consignment or endorsed to them, and paying only such taxes as appertained to the class of industry or commerce under which they were registerd and the duties on the goods imported, without any further requirements from the Custom-House; that Custom-Houses in the United States are Federal Institutions, and in this Island they had been, from October 18, 1898, April 1, 1900, dependencies of the War Deparment,

derogó en ese punto esas Ordenes generales declarando libres las importaciones cuya decisión si bien no fué publicada, se puso en conocimiento del Colector de la Aduana de esta Ciudad, que á la vez era Tesorero de Puerto Rico, quien la comunicó á sus subordinados de la Isla, haciéndoles presente que solo debían detener las mercancías declaradas para aforo, el tiempo neccesario para quedar cumplidas las Ordenanzas de Aduanas sin exigir matrícula de importación; que esa decisión se fijó al público en las puertas de Aduana, publicándola la prensa, y los comerciantes verificaron importaciones con solo la presentación de un conocimiento ya extendido á su consignación ó endosado, satisfaciendo solo las costas correspondientes á la clase de Industria ó Comercio á que se dedicaran y se hallaban matriculados y los derechos de las mercancías importadas sin exigir más requisitos la Aduana: que las Aduanas tienen en los Estados Unidos el carácter de Institución Federal y en esta Isla dependieron desde el 18 de Octubre de 1898 á 1º de Abril de 1900, de la Secretaría de la Guerra, hoy del Secretario del Tesoro de Washington, y nunca de la Secretaría Civil ni del Tesoro de Puerto Rico y por órden del Tesorero actual reviviéndose las patentes de importación y derogándose lo dispuesto por el General Henry, se notificó en 16 de Julio de 1900, á diversos comerciantes, entre ellos los recurrentes, que dentro de tercero día abonaran en la Colecturía de Rentas Internas la diferencia sobre la cuota con que figuraban en la matrícula del ejercicio de 1899 á 1900 y las que les correspondían como introductores: que el caso se consultó con el Colector de Aduanas de esta Ciudad que contestó al Presidente de la Cámara de Comercio que la contribución impuesta por el Gobierno Español en proporción á la cantidad importada, se abolió al tiempo de la ocupación Americana, y el único requisito para retirar mercancías de la Aduana es una declaración de entrada acompañada de un conocimiento á su nombre ó endosado juntos con facturas aceptables y el pago de derechos de dichas mercancías: que con esa carta acudió la Cámara de Comercio al Tesoro, haciendo notar que la resolución contraria al derecho vigente, pidiéndole la derogase, sin obtenerlo de él ni del Gobernador Civil que manifestó que los Tribunales podían dejarla sin efecto : que los recurrentes abonaron sus derechos para hacerlos valer en recurso contencioso-administrativo, consignando sus nombres, apellidos y cantidades : Siendo los fundamentos legales, quedaron vigentes las leyes á menos que fueran incompatibles con el cambio realizado en Puerto Rico, según proclama ú Orden General No. 1 de 1898, disponiendo en la undécima continuase rigiéndola sobre patentes de importación : que Henry la derogó en Orden especial al Colector de Rentas de San Juan quien la comunicó á sus subordinados, declarando libre las importaciones y aboliendo las patentes; cita la Sección 8ª de la Proclama del Presidente de la República de 20 de Enero de 1899; que ese era el estado jurídico al publicarse el Bill Foraker, que ha podido modificarlo el Tesorero, según la Sec-

and are now dependencies of the Treasury Department, at Washington, but they have never been under the control of either the Secretary or Treasurer of Porto Rico; that by an order of the present Treasurer, reestablishing the importation licences or *patentes*, and repealing General Henry's order, several merchants, among them the appellants, were notified on July 16, 1900, to cover at the office of the Collector of Internal Revenues, within three days, the difference resulting between the tax assigned them for their respective licences in the budget of 1899-1900, and the tax due by them as importers; that the case was summitted to the Collector of Customs at this city who replied to the President of the Chamber of Commerce that the tax imposed by the Spanish Government in proportion to the amount of goods imported, had been abolished at the time of the American occupation, and the only formality required for the withdrawal of merchandise from the Custom House, is the exhibition of a manifest, together with a proper bill of lading and satisfactory invoices, and the payment of the duties on said merchandise; that with this letter the Chamber of Commerce applied to the Treasurer, and called his attention to the fact that the resolution in question was contrary to the law in force, and asked that it be revoked, to which he would not accede, nor would the Governor act in the matter, stating that it was a case to be decided by the Courts; that appellants had paid under protest for the purpose of testing their case in a court for the trial of claims against the Administration, stating for that purpose their names, surnames and the respective amounts. As legal propositions they maintained that the laws had continued in force except where inconsistent with the change brought about in Porto Rico, according to General Orders No 1, Series of 1898, while General Orders No. 11, same Series, provided that the laws governing the importation of merchandise be continued; that General Henry had repealed said orders by Special Order addressed to the Collector of Internal Revenues, at San Juan, who communicated the same to his subordinates, declaring importations free to all and abolishing licenses or *patentes*. They cited Section 8 of the Proclamation of the President of the Republic, dated January 20, 1899, which was the legal status when the Foraker Act was published; that the same could have been modified by the Treasurer under Section 8 of said Act. Reference is made to article 1 section 8 of the Organic Act. It is alleged that the repeal by the Treasurer of General Henry's Order cannot be given a retroactive effect; that this court has jurisdiction of the suit; that the resolution contested comes under articles 1 and 2 of the Royal decree of November 23, 1888, and 1 and 3 of the Regulation governing administrative cases, which is final. They pray that said resolution be revoked and General Henry's Special Order abolishing importation licenses or *patentes* be declared in force until otherwise provided by the Legislative Assembly of Porto Rico, and that the amounts paid on

ción 8ª de ese Bill; refiere el Artículo 1 de la Sección 8ª de la Carta Constitucional: que no puede darse á la derogación hecha por el Tesorero de la Orden de Henry efecto retroactivo, este Tribunal es competente para conocer de la demanda; la resolución impugnada está comprendida en los Artículos 1 y 2 del R. D. de 23 de Noviembre de 1888 y 1 y 3 del Reglamento contencioso causando estado; y suplica se revoque la resolución, declarando debe quedar subsistente la Orden especial de Henry aboliendo las patentes de importación hasta que la Legislatura del país resuelva otra cosa y se devuelvan á los recurrentes las cantidades que relaciona sobradas por diferencia de tarifa.

*Resultando:* que el Ministerio Fiscal contestó alegando los siguientes hechos; que el Tesorero ordenó una investigación para conocer si los importadores satisfacían al Tesoro Insular las cuotas correspondientes á la Industria que ejercían conforme al Reglamento vigente: que sirvió de base lo manifestado por Comerciantes y Agentes Mercantiles en manifiesto, declaraciones y facturas: que el resultado fué el estado demostrativo formado y se vino en conocimiento de que importadores matriculados como de tercera clase en la Tarifa segunda, clase 16 A, 3ª realizaron consignaciones de buques y practicaron operaciones de banca, correspondiéndoles como banqueros y consignatarios la Tarifa 2ª clase 16, A. 1 y que los que figuraban como importadores de tercera, Tarifa 2ª clase 16, A. 3ª realizaron durante el año importaciones que excedían de doce mil dollars y debían figurar en la Tarifa 2ª clase 16, A. 2ª : que otros matriculados de distintas clases de la Tarifa 1, y que no podían hacer importaciones de clase alguna durante el año en ejercicio las habían verificado, por lo que debían figurar en la Tarifa 2ª clase 16, A. 3ª ; que otros habían hecho iguales importaciones siendo incluidos en las respectivas listas y citándose en cada agrupación los nombres y apellidos de los recurrentes: que el Tesorero, inspirado en que las disposiciones sobre rentas se cumplieran, ordenó se procediera á requerir el pago á los referidos por la diferencia y notificados han establecido recurso contencioso-administrativo fundado en una Orden del General Henry: siendo el derecho el Reglamento para la Administración y cobranza de la contribución industrial de esta Isla, según el que ningún comerciante de la Tarifa 1 debe realizar importación alguna: los de la segunda debían ajustar sus operaciones á los límites señalados en cada uno de los apartados del número 16; que previniendo el caso de que se excedieran de los límites señalados á cada clase, les imponía la obligación de pagar el importe de la cuota· correspondiente tan pronto se conociera el exceso, bien por manifestación espontánea, bien por investigación administrativa según nota 1 del 16 y para que no eludieran estos preceptos dictó la nota 2ª de ese número: que realizado el cambio de soberanía en 18 de Octubre de 1898 se dictó la Orden General número 1 y como esa disposición que mantenía en vigor dicho Reglamento no fuese bastante en 9 de

account of difference of schedules be returned. The Fiscal answered the complaint and alleged the following facts: That the Treasurer had ordered an investigation to be made for the purpose of ascertaining whether importers were covering into the Insular Treasury the imposts assigned to their respective industries according to the Regulation in force; that upon examination of Custom House papers it was found, as shown by the report made, that importers registered under the third class, Schedule 2, Class 16 A. 3rd, had been carrying on a shipping and banking business when for this they should have been registered as importers and bankers under Schedule 2, Class 16 A. 1st, while merchants registered as third class importers Schedule 2, Class 16 A. 3rd, had made importations during the year aggregating over twelve thousand dollars, and should have been classified under Schedule 2, Class 16 A. 2nd; that others who were registered under different classes of Schedule 1, and were therefore not permitted to make any importations, had imported goods during the year and should be classified under Schedule 2, Class 16 A, 3rd; that the Treasurer, in view of these facts, and desiring that the ordinances relating to revenue should be complied with, ordered that the parties mentioned in the report be required to pay the resulting difference, and having been so notified they have filed this "litigative-administrative" suit basing their rights of action upon an Order of General Henry; that the law governing the matter is the Regulation for the administration and collection of industrial taxes of the Island, according to which no merchant classified under Schedule 1, should make any importations; those under Schedule 2, should confine their operations to the limits defined in each of the paragraphs of Class 16; that foreseeing the possibility of the limits assigned to each class being exceeded, they were placed under the obligation of paying the amount of the proper dues as soon as the excess was known, either by the declaration of the party concerned, or as the result of an administrative investigation, pursuant to note 1, of class 16, and to preclude any evasion of these provisions, note 2 of said class had been inserted; that the change of sovereignty having taken place on the 18th of October 1898, General Order No. 1 was issued, and this ordinance which continued in force the aforesaid Regulation not being sufficient, No. 11 was issued, as also another General Order on the 12th of the same month, without there having been any subsequent legal provision to repeal, amend or annul said Regulation; that it is not possible to infer from the contents of the letter addressed to the Chairman of the Chamber of Commerce, that the same constitutes a repealing General Order, inasmuch as it is only the expression of a private opinion; that the industrial tax, like the land tax, constitutes one of the sources of revenue of the Insular Treasury; that the Constitution of the United States, Section 10, does not affect the case in point, since it is not a question of imposing duties on importations, but of taxing the pursuit of certain industries; that the Insular

Noviembre del propio año se dictó la 11, dictándose una nueva Orden General en 12 del propio mes, sin que con posterioridad se haya dictado disposición legal alguna que la derogue, modifique ó anule: que no es posible deducir una Orden General derogativa del contenido de la Carta dirigida al Presidente de la Cámara de Comercio por ser solo reflejo de una opinión particular: que la contribución industrial al igual que la territorial constituye una de las rentas internas del Tesoro Insular: que la Constitución de los Estados Unidos en su Sección 10ª en nada afecta á la cuestión que se debate, pues no se trata de imponer derechos á la importación y si del ejercicio de una industria: que las Tarifas de Aduana de esta Isla en nada afectan á la cuestión y si para el despacho de una mercancía no se exigen más requisitos que el conocimiento y factura, caben independientemente disposiciones legales que impongan un tributo al importador por ejercicio de la industria: por lo que los acuerdos del Tesorero son válidos y no pueden prevalecer las alegaciones de los recurrentes y suplica se declare sin lugar el recurso y se devuelvan al Tesorero los expedientes administrativos que se reclamaron.

*Resultando:* que abierto á prueba de la del demandante consta: que el Administrador de la Aduana de San Juan contestó no existe dato alguno en la Aduana del Gobierno General de Orden especial, que revoque órdenes anteriores que se relacionen con el cobro de derechos sobre el de importar mercancías: que el Archivo contiene una carta de 29 de Mayo de 1899, dirigida al Comandante Mayor James A. Buchanam, Administrador y Tesorero de Puerto Rico en aquella época, que es como sigue: "Tengo el honor de incluir copia de la circular dirigida por Ud. á esta Oficina, en 20 de Mayo, referente á licencia de importadores que no tienen relación con el Departamento del Administrador de Aduanas y ordenando á los Administradores de Aduanas, que no detengan las mercancías más que lo necesario para cumplir con el Reglamento de Aduanas. El General Davis desea se publique tan pronto como sea factible la circular, como está propuesta por Ud. y que queda aprobada por él, para conocimiento y gobierno para todos los interesados. La Orden de fecha 1º de Junio de 1899 es: "A todos los Administradores. No concierne en nada á las Aduanas el averiguar si las Compañías ó individuos violan las leyes municipales, por lo tanto, cuando se declaren mercancías, los Administradores de Aduanas no las detendrán más tiempo que el necesario para cumplir con los Reglamentos de Aduanas. La cuestión de licencias de importadores pertenece al importador y á la Municipalidad. Lo que antecede, es la opinión del Comandante del Departamento, y que debe cumplirse. Buchanam." Sírvase excusarme de someter una opinión tocante á la comunicación de 21 de Junio de 1900, dirigida por el Teniente Coronel Davis, Administrador interino de Aduanas, bajo el Departamento de Hacienda, á Mr. Cárlos M. Soler, Presidente de la Cámara de Comercio de San Juan, y á la cual se refiere Ud. en su carta: la del de Arecibo, Aguadilla y

Custom House tariff in no way affects the question, and if for the dispatch of merchandise no formality is required other than the exhibition of the bill of lading and invoice, there may be independent legal provisions imposing upon importers a tax for the privilege of engaging in certain industries; hence the resolutions of the Treasurer are valid, and the allegations of appellants cannot prevail; wherefore it is prayed that the case be dismissed and that the record of the administrative proceedings be returned to the Treasurer as demanded. The procedings for the taking of evidence having been had, it appears from that introduced by the appellants that the Collector of Customs of San Juan, had stated in his reply that among the records of the Custom House there was no special order from the Government, repealing previous orders relating to the collection of duties on merchandise imported; that there was on file a letter dated May 29, 1899, addressed to Major James A. Buchanan, at that time Collector and Treasurer of Porto Rico, which reads as follows: "I have the honor to enclose copy of the circular addressed by you to this office on May 29th, referring to importers licences which have no relation to the Department of Customs, and ordering Collectors not to detain merchandise more than the time necessary to comply with the Custom-House Regulations. General Davis desires that the circular as proposed by you and approved by him, be published as soon as practicable, for the information and guidance of all concerned. The Order dated June 1, 1899, is this: "To all Custom House Collectors. It is no concern of the Custom House to ascertain whether firms or individuals violate the municipal ordinances. Therefore, when goods are declared at the Custom House for entry, Collectors shall not detain them longer than the time required to comply with the Custom House Regulations. The question of importers' licences is one that concerns the importer and the Municipality. The foregoing is the opinion of the Commander of the Department and should be complied with. Buchanan". Please excuse me from expressing an opinion with regard to the communication of July 21, 1900, addressed by Lt. Col. Davis, Acting Collector of Customs under the Department of the Treasury, to Mr. Carlos M. Soler, Chairman of the Chamber of Commerce of San Juan, and to which you refer in your letter"; those from the Collectors of Arecibo, Aguadilla and Mayagüez referring to the above mentioned circular to Collectors, and the letter from the Chairman of the Chamber of Commerce accompanying the one addressed to Collector Davis, in which an inquiry is made as to whether the procedure requiring importers' licences has been annulled, suspended or modified, with the reply of the Collector stating that the only requisite to withdraw goods from the Custom House is the presentation by the consignee or agent of a manifest, together with a bill of lading made out to him, the oral evidence being Mr. Buchanan's testimony to the effect that it was true that he had sent to Custom House Collectors the Order

Mayagüez, refieren la circular á los administradores antes mencionada: y la carta remitida por el Presidente de la Cámara de Comercio, acompañando la que dirigiera al Colector Davis, á quien expresa desea saber si se ha anulado, suspendido ó modificado el procedimiento de exigir patente ó matrícula de importador, con la contestación del Administrador, que el único requisito para retirar mercancías de la Aduana, es la presentación por el propio consignatario ó agente de la declaración, acompañada de un Bill of Lading para él: siendo la testifical declaración de Mr. Buchanam, que es cierto dirigió á los Colectores de Aduanas la orden: "A los Colectores"; que esa orden fué de acuerdo con las instrucciones del Reglamento de Aduanas, y que el Comandante Militar no podía darles esas órdenes, porque dependía exclusivamente del Presidente de los Estados Unidos, cuya orden estuvo en vigor mientras fué Colector y las introducciones de mercancías se hacían sin necesidad de patente. Don Cárlos M. Soler reconoce la carta que recibió de Mr. Davis, Administrador de la Aduana, á consulta que se le dirigiera.

*Resultando:* que señalado el día y hora para la vista, se celebró con asistencia de los defensores representantes de las partes y que en este juicio se han observado las reglas de sustanciación por la ley prevenidas. Siendo ponente el Sr. Juez Asociado Don Juan Morera Martínez.

*Considerando:* que declarada vigente por las Órdenes Generales números 1, 11 y 12 de 1898, la legislación que regía antes de la ocupación Americana, era necesaria otra Orden General posterior ó diposición legal para que desapareciera la fuerza y vigor del Reglamento y Tarifas para la administración y cobranza de la contribución industrial de esta isla, aplicado por el Tesorero á la cuestión que se debate.

*Considerando:* que no deben confundirse las rentas internas con los derechos y requisitos para la importación por las Aduanas, de las mercancías que en la Isla se introduzcan, pues habiendo correspondido este ramo de la Administración al Gobierno Federal, de la comunicación á todos los administradores, no se deduce que hayan sido abolidas las patentes y tarifas, ni por tanto, la contribución de Comercio é Industria, y sí que no es necesario para obtener el despacho de Aduana, el requisito de la patente, porque téngala ó nó, debe despacharse la mercancía.

*Considerando:* que de esa misma comunicación se deduce ese criterio al decir "no concierne en nada á las Aduanas el averiguar si las Compañías ó individuos violan las leyes municipales", lo que implica que puede subsistir la contribución de Comercio é Industria, como renta interna independiente de la Aduana, pero no será requisito para que éstas despachen, la falta de patente ó estar matriculado y pagar con arreglo á tarifa,

*Considerando:* que no existiendo disposición alguna que modifique, altere ó anule el Reglamento de administración y cobranza de la contribución de industria y comercio hasta que se dictó por la Asamblea el Bill para proveer

entitled "To All Collectors"; that said Order was issued in accordance with
the requiriments of the Custom Regulation, and that the Military Comman-
der could not issue such orders, because that depended exclusively on the
President of the United States; that the order in question remained in force
throughout the period during which he was Collector and importations were
made without the need of any licence.     Carlos M. Soler acknowledged the
letter he had received from Collector Davis, in reply to his inquiry.     A day
was set for the hearing, at which both parties were represented by their
respective counsel, the rules of procedure provided for by law having been
complied with Judge Juan Morera Martínez, prepared the opinion of the
Court.     The laws existing prior to the American occupation, having been
declared in force by General Orders Nos. 1, 11 and 12 of 1898, another
General Order or legal provision would have been necessary to repeal the
Regulation and Tariff for the administration and collection of the industrial
tax of the Island, applied by the Treasurer to the question at issue. Internal
Revenues should not be confused with the Customs duties and requirements
for the importation of merchandise into the Island, this branch of the Admi-
nistration appertaining to the Federal Government; for which reason it
cannot be inferred from the communication addressed to Collectors, that the
licenses and tariffs, and therefore, the taxes on Commerce and Industry, have
been abolished, but that the possession of a licence is not necessary for
the dispatch of goods whether said licence be held or not.     This is to
be inferred from the words: "It is no concern of the Custom House to
ascertain whether firms or individuals violate the municipal ordinance",
implying that the tax on Commerce and Industry may be imposed as Inter-
nal Revenues, independently of the Custom House, but that a municipal
license and the payment of the corresponding tariff rate, are not necessary
requisites for dispatch of goods at the Custom House.     Inasmuch as there
was not in existence any provision modifying, altering or canceling the
Regulation for the administration and collection of the tax on industry and
commerce, until the Act Providing Revennes for the People of Porto Rico,
and for other purposes, was passed by the Legislative Assembly, taking effect
July 1, 1901; and the question not being one of Custom House duties, but of
taxation for engaging in some branch of Commerce or Industry, the Treasurer
could take action in the matter as he did, based on the provisions of the
aforesaid Regulation, and his resolution not being contested on any other
ground, should be sustained and the complaint dismissed, with no costs
against plaintiffs there having been no temerity on their part. We, therefore,
declare that the complaint can not be sustained and that the resolution issued
by the Treasurer, being based upon the Regulation in force for the collection
of insular taxes, should prevail."

From the above judgment Counsel for the plaintiffs took

de rentas al Pueblo de Puerto Rico y para otros fines, que empezó á regir en 1 de Julio de 1901; y no tratándose de derechos de Aduana y sí de derechos para ejercer el comercio ó la industria, pudo el Tesorero dictar la resolución que tomó, fundado en las prescripciones del Reglamento referido, y no impugnándose dicha resolución bajo otro punto de vista, hay que declarar improcedente ó sin lugar la demanda, porque dicha resolución se funda en las prescripciones del mismo.

*Considerando:* que no existiendo temeridad, no cabe condenación de costas.

*Fallamos:* que declarando sin lugar la demanda, debemos absolver y absolvemos á la Administración, declaramos subsistente y válida la resolución del Tesorero, impugnada en la demanda, sin especial condenación de costas y devuélvanse á Tesorería los expedientes administrativos que se reclamaron. Así por esta, nuestra sentencia lo pronunciamos, mandamos y firmamos.''

*Resultando:* que la representación de los comerciantes anteriormente mencionados, interpuso contra la anterior sentencia recurso de apelación que fué admitido para ante este Tribunal Supremo, con citación y emplazamiento de las partes, lo que tuvo lugar el día 6 y 9 de Agosto de 1902, á la parte demandante, y al Fiscal, respectivamente.

*Resultando:* que elevadas á este Tribunal las actuaciones de primera instancia, compareció primero el Letrado Don Herminio Diaz Navarro, y luego en su sustitución el Licenciado Don Jacinto Texidor, á sostener el recurso á nombre de los que se expresan en el encabezamiento de esta sentencia, así como también el Fiscal, á sostener los derechos de El Pueblo de Puerto Rico, á quienes se tuvo por comparecidos y se mandó redactar la correspondiente nota que se puso de manifiesto á las partes, junto con las actuaciones y expediente gubernativo, y no alegándose nada en contrario, se señaló día para la vista, que tuvo lugar el 20 de Enero último, con informe oral de la parte apelante y del Fiscal.

Abogados de los apelantes: *Sres. Diaz* y *Texidor.*

Abogado del apelado: *Sr. del Toro*, Fiscal.

an appeal to this Court, which appeal was allowed and the parties were cited, and the same was heard on the 6th and 9th of August 1902, both parties being represented.

*Mr. Herminio Diaz Navarro*, first, and later *Mr. Jacinto Texidor*, for appellants.

Fiscal *Mr. Emilio del Toro*, for respondent.

MR. JUSTICE, JAMES H. MACLEARY, after making the above statement of facts, rendered the following opinion of the Court:

The findings of fact and the conclusions of law of the judgment appealed from, are acepted. Moreover, no error has been committed by the District Court of San Juan in the decision hereinbefore quoted in full. It was never the object of the Customs Regulations to interfere with the collection of insular revenues, nor could it have such an effect, even if that had been its purpose. The decisions of the Insular Treasury, as set forth in aforesaid judgment are in strict accordance with the laws in force at the time. We adjudge that we should affirm and do affirm, the judgment rendered by the District Court of San Juan, June 6, 1902, with costs against appellants.

Messrs. Chief Justice Quiñones, and Associate Justices Hernández, Figueras and Sulzbacher, concurring.